**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

In re:

Activated Carbon-Based Hunting
Clothing Marketing and Sales Practices
Litigation

Multidistrict Litigation
No. 09-md-2059 (RHK/JJK)

**SUGGESTION OF REMAND**

THIS DOCUMENT RELATES TO:

Pickering v. A.L.S. Enterprises, Inc., *et al.*, Civ. No. 09-1603 (RHK/JJK)
Dorris v. A.L.S. Enterprises, Inc., *et al.*, Civ. No. 09-1609 (RHK/JJK)
Pemberton v. A.L.S. Enterprises, Inc., *et al.*, Civ. No. 09-2059 (RHK/JJK)
Beld v. A.L.S. Enterprises, Inc., *et al.*, Civ. No. 09-1611 (RHK/JJK)
Lange v. A.L.S. Enterprises, Inc., *et al.*, Civ. No. 09-1805 (RHK/JJK)
Cook v. A.L.S. Enterprises, Inc., *et al.*, Civ. No. 09-1806 (RHK/JJK)
Super v. A.L.S. Enterprises, Inc., *et al.*, Civ. No. 09-2036 (RHK/JJK)

These matters are before the Court *sua sponte*.

What began more than four years ago as a relatively straight-forward Minnesota consumer-fraud case in this Court slowly morphed into the instant nine-case, multi-district litigation ("MDL") involving claims under the laws of Minnesota, Indiana, Wisconsin, Illinois, New York, Florida, California, Maryland, and Michigan.[1] The Court concludes the time has now come for these actions to go their separate ways, and hence it suggests that the Judicial Panel on Multidistrict Litigation ("JPML") remand each of the above actions to its court of origin. To explain why the Court has reached this conclusion, a recitation of where these matters currently stand, and how they got here, is first in order.

---

[1] A tenth case asserting claims under Washington law, Eggart v. A.L.S. Enterprises, Inc., Civ. No. 09-1807, has been dismissed.

**BACKGROUND**

**I.      The initial action is filed**

In September 2007, an action styled <u>Theodore Robert Carlson, *et al.* v. A.L.S. Enterprises, Inc., *et al.*</u>, Civ. No. 07-3970, was filed in this Court.  The thrust of the plaintiffs' claims was that defendant A.L.S. Enterprises, Inc. ("ALS") and several of its licensees (the remaining defendants) made false and inaccurate representations when marketing and selling hunting clothing embedded with "Scent-Lok," an activated-carbon product design to mask human odors.  The named plaintiffs, who purported to represent a class of similarly situated Minnesota residents, asserted claims under three Minnesota statutes[2] as well as a claim for civil conspiracy among the defendants.  The defendants filed Motions to Dismiss that were granted in January 2008, with the Court affording the plaintiffs leave to amend.

An Amended Complaint was filed in short order, which (among other things) dropped Carlson as a plaintiff and provided more detail about the nature of the plaintiffs' claims.  (The case thereafter became known as "<u>Buetow</u>," the surname of the lead remaining plaintiff.)  The plaintiffs asserted the same four claims in their Amended Complaint as in their initial Complaint, and they continued to purport to represent a class of Minnesota residents who had purchased Scent-Lok products.  The defendants again moved to dismiss (in whole or in part), and those motions were partially granted on May 5, 2008; the Court determined that the plaintiffs' civil-conspiracy claim must be

---

[2] Namely, the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, the Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, and the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.13.

dismissed and that certain defendants should be dropped from the case, but the Amended

Complaint otherwise sufficed to plead claims under the statutes at issue.

Buetow then proceeded with discovery, with the Magistrate Judge[3] initially setting

a discovery deadline of August 17, 2009.  Over the better part of a year, several discovery

Motions were filed, argued, and decided, and the plaintiffs filed a Second Amended

Complaint, although the nature of their claims did not change.  In November 2008, the

plaintiffs filed a Motion for Class Certification, which was fully (and extensively) briefed

as of March 2009.

## II.    Additional actions are filed and consolidated by the JPML

Meanwhile, on April 14, 2008, an action styled Scott Dorris, *et al.* v. A,L.S.

Enterprises, Inc., *et al.*, No. 08-cv-2118, had been filed in the United States District Court

for the Northern District of Illinois.  The tenor of the claims in Dorris were the same as

those in Buetow – false or misleading representations in the marketing and sale of Scent-

Lok products – but the Dorris plaintiffs asserted claims under *Illinois* consumer-

protection statutes, as well as a claim for civil conspiracy.  Save for local counsel, the

attorneys representing the plaintiffs in Buetow and Dorris were the same.  In early 2009,

additional cases were filed in federal courts in Wisconsin (Beld), Indiana (Pemberton),

and Florida (Pickering), asserting similar claims under those states' laws; the plaintiffs in

those actions also were represented by the same counsel as in Buetow and Dorris.

On March 31, 2009, the plaintiffs in these cases (and Buetow) moved the JPML to

consolidate all of the actions in one court for coordinated pretrial proceedings, pursuant

---

[3] The Honorable Jeffrey J. Keyes.

to 28 U.S.C. § 1407.  While recognizing that there were "certain issues of state law [that] may be unique to each case," the plaintiffs asserted that the interests of justice and the convenience of the parties and witnesses would best be served by consolidation, primarily because discovery could be "taken once and used in each" remaining case. (Buetow Doc. No. 195-1 at 11-12.)  The defendants agreed that multi-district proceedings were appropriate, but they asked the JPML to exclude Buetow from consolidation because it was more procedurally advanced than the remaining cases (many of which had just been filed).  By Order dated June 18, 2009, the JPML rejected that argument and consolidated *all* of the then-pending actions (including Buetow) in this Court "for coordinated or consolidated pretrial proceedings."[4]  An additional "tag-along" action filed in federal court in Michigan (Super) was later transferred here, as well.  (Together, all of these actions except Buetow are referred to hereinafter collectively as the "Related Actions.")[5]

## III.    The actions progress

After the JPML issued its consolidation Order, this Court denied the class-certification Motion in Buetow.  It noted that too many issues, such as reliance, damages, and the statute of limitations, were subject to individualized inquiry to justify certifying a class.  It pointed out, for example, that although the plaintiffs "claim to have relied upon

---

[4] By that time, three "tag-along" actions had been filed in federal courts in California (Lange), Maryland (Cook), and Washington (Eggart), asserting similar claims under each state's consumer-protection or deceptive-trade-practices laws.  Those actions also were transferred here.

[5] An additional action (Lynch) asserting statutory and common-law claims under New York law was later filed directly in this Court.  Although some of the claims in Lynch overlap factually and/or legally with those in the Related Actions (and Buetow), Lynch names additional defendants and asserts at least one wholly unique claim (breach of express warranty).

statements from the [d]efendants in making their purchases, the . . . [p]laintiffs also relied on a variety of other materials and recommendations," leaving the defendants' potential liability "dominated by individual issues of causation and reliance."  It also noted that "detailed and individual factual inquiries" would be required to determine each plaintiff's potential damages.  The plaintiffs sought leave to take an interlocutory appeal, but their request was denied by the Eighth Circuit on September 9, 2009.

While the class-certification issue was being resolved in <u>Buetow</u>, pretrial proceedings commenced in the Related Actions.  The undersigned and the Magistrate Judge jointly issued a Pretrial Scheduling Order (MDL Doc. 15) appointing lead counsel for the plaintiffs; rejecting a request to file a Master Complaint in the Related Actions, as it would "not aid in the efficient administration of" those cases; and setting deadlines for class certification (April 1, 2010) and discovery (June 1, 2010).[6]  The Pretrial Scheduling Order also carried over the existing Protective Order from <u>Buetow</u> and expressly provided that all "[d]iscovery material from [<u>Buetow</u>] may be used in any of the [Related] Actions."  (<u>Id.</u> at 10.)

Meanwhile, discovery was completed in <u>Buetow</u> and the parties cross-moved for summary judgment in that case.  The Court heard oral argument on those Motions on October 30, 2009, but temporarily (and informally) held them – and the Motions to Dismiss the Related Actions – in abeyance while the Magistrate Judge attempted to settle

---

[6] The discovery deadline was later extended to August 1, 2010.

all of these actions.  Despite those efforts, a settlement was not in the offing.[7]  With no

settlement reached, on May 13, 2010, the Court granted in part and denied in part the

parties' cross-Motions for summary judgment in Buetow.  The Court held that the

plaintiffs were entitled to relief on certain of their claims because some of the defendants'

advertisements – namely, those claiming that Scent-Lok products "can 'eliminate' odor"

– were literally false.  The Court issued a permanent injunction enjoining the use of such

literally false claims in the defendants' advertising and marketing materials, and the

defendants appealed both the summary-judgment ruling and Order granting injunctive

relief to the Eighth Circuit.

IV.    **Discovery is completed in the Related Actions and Buetow is reversed**

In July 2010, the plaintiffs in each of the Related Actions moved for class

certification.  Like the Motions to Dismiss, these Motions also raised several unique

questions of state law.  Shortly thereafter, on August 1, 2010, the discovery period ended

in the Related Actions.  And on September 29, 2010, the Court denied the class-

certification Motions in those cases.

In the interim, on September 20, 2010, the parties cross-moved for summary

judgment in the Related Actions.  After submitting their opening briefs, however, the

parties stipulated to stay those cases pending disposition of the appeal in Buetow.  The

Court approved that stipulation and stayed the Related Actions on September 29, 2010.

On August 18, 2011, the Eighth Circuit reversed this Court's summary-judgment

Order in Buetow and vacated the permanent injunction.  See Buetow v. A.L.S. Enters.,

---

[7] However, the plaintiffs' claims against one Defendant, Robinson Outdoors, were settled and those claims dismissed.

Inc., 650 F.3d 1178 (8th Cir. 2011).  The Court of Appeals determined that this Court's finding of literal falsity was erroneous because an advertisement, in order to be unlawful, must be both false *and* misleading.  Even if, as the parties agreed, the defendants' products cannot remove 100% of human odors (meaning their advertisements were, in fact, literally false), the appellate court "doubt[ed]" that any of the defendants' advertisements could have been *misleading* to consumers.  Id. at 1186-87 ("We doubt there are many hunters so scientifically unsophisticated as to believe that any product can 'eliminate' every molecule of human odor.").  The court ordered dismissal of the Buetow plaintiffs' claims for injunctive relief and remanded their remaining claims for damages for further proceedings.

Following remand, the defendants once again moved to dismiss in Buetow, this time arguing that the claims fail to pass muster because the plaintiffs could not establish a public benefit, as required under the Minnesota statutes in question.  This Motion has now been fully briefed.  The Related Actions, however, remain in limbo; the defendants have not addressed how those actions should now proceed, and the plaintiffs have asked the Court to leave in place the stay in those cases pending a trial in Buetow (assuming one occurs).

## ANALYSIS

Based on the history recounted above, it is the undersigned's view that the purposes behind consolidating the Related Actions in this Court have now been served; accordingly, the undersigned respectfully suggests to the JPML that each of those actions be remanded to its court of origin.

Title 28 U.S.C. § 1407(a), pursuant to which the Related Actions were transferred here, provides in relevant part:

> When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings. Such transfers shall be made by the judicial panel on multidistrict litigation . . . upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions. *Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated.*

(emphasis added). Once "coordinated or consolidated pretrial proceedings" have been completed in the transferee court, the transferred cases must be remanded to their original courts (whether for trial or otherwise). Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 28 (1998). The authority to do so, however, rests entirely with the JPML; this Court lacks the power to remand an action transferred to it under Section 1407. See id. (noting § 1407(a) "imposes a duty *on the Panel* to remand any such action to the original district 'at or before the conclusion of such pretrial proceedings'") (emphasis added); In re Wilson, 451 F.3d 161, 165 n.5 (3d Cir. 2006); In re Baycol Prods. Litig., 265 F.R.D. 453, 455 (D. Minn. 2008) (Davis, J.) ("The power to remand a case to the transferor court lies solely with the JPML."). Hence, "at some point after the JPML's referral, the transferee court is expected to suggest to the JPML that the matter should be returned to the transferor court for final resolution." In re Light Cigarettes Mktg. Sales Practices Litig., No. MDL 2068, 2011 WL 6151510, at *2 (D. Me. Dec. 12,

2011).  Indeed, its own rules indicate that the JPML is "reluctant to order remand absent a

suggestion of remand from the transferee district court."  R.P.J.P.M.L. 7.6(d).

The question, then, is at what point suggestion of remand becomes appropriate in a

multi-district litigation.  In answering that question, a court "should be guided by [the]

standards for remand employed by the Panel."  In re Baycol, 265 F.R.D. at 455.

Generally speaking, whether to remand "turns on . . . whether the case will benefit from

further coordinated proceedings as part of the MDL."  Id. (citing In re Air Crash Disaster

at Tenerife, Canary Islands, 461 F. Supp. 671, 672-73 (J.P.M.L. 1978)).  In the

undersigned's view, the Related Actions have passed the point where they will continue

to benefit from coordinated proceedings in this Court.

In reaching that conclusion, the key factor is that discovery in these actions is now

complete.  "[T]he primary purpose behind assigning multidistrict litigation to a transferee

court is to promote efficiency through the coordination of discovery."  In re Nuvaring

Prods. Liab. Litig., MDL No. 1964, 2009 WL 4825170, at *1 (E.D. Mo. Dec. 11, 2009)

(citing In re Orthopedic Bone Screw Prods. Liab. Litig., MDL No. 1014, 1997 WL

109595, at *2 (E.D. Pa. Mar. 7, 1997)); accord, e.g., Lexecon, 523 U.S. at 40 (citing

legislative history of § 1407 that "[w]hen the deposition[s] and discovery [are]

completed, then the original litigation is remanded to the transferor court for trial"); In re

Evergreen Valley Project Litig., 435 F. Supp. 923, 924 (J.P.M.L. 1977) (per curiam)

(remand of transferred actions appropriate where "further pretrial discovery in federal

court [was] unnecessary").  The parties fully litigated several discovery disputes in this

Court, each of which has been resolved.  Discovery in Buetow was made available for

use in each of the Related Actions, and the discovery period in all cases has closed.  The "primary purpose" of consolidation, therefore, has been achieved.[8]

Moreover, the scope of the transferred cases has been narrowed as a result of the settlement of claims against one of the defendants (Robinson Outdoors) and one Related Action (Eggart) being voluntarily dismissed.  Further, when transferred to this Court by the JPML, each Related Action potentially was a large class case, impacting dozens (if not hundreds or thousands) of plaintiffs who had purchased the defendants' products.  But the Court has denied class certification in each action, leaving nearly all of them as single-plaintiff cases.  (Super and Dorris have two named plaintiffs.)  With discovery over and only small, "simple action[s]" remaining, "the advantages which were contemplated in the transfer of [the Related Actions] no longer exist."  In re King Res. Co. Sec. Litig., 458 F. Supp. 220, 221 (J.P.M.L. 1978) (per curiam); see also In re Ford Motor Co. Bronco II Prod. Liab. Litig., MDL No. 991, 1998 WL 308013, at *2 (E.D. La. June 8, 1998) (suggesting remand to JPML where discovery had ended, class certification had been denied, and all that remained were "the claims of . . . a handful of named plaintiffs").

In addition, the Court has undertaken several attempts to resolve this MDL in its entirety through settlement, without success (despite yeoman efforts by the Magistrate Judge).  Efforts to effect a global settlement may provide a sufficient basis for keeping

---

[8] Suggestion of remand would be appropriate even if some discovery issues remained outstanding.  See, e.g., In re Ins. Brokerage Antitrust Litig., MDL No. 1663, 2009 WL 1874085, at *3-4 (D.N.J. June 30, 2009); In re Baseball Bat Antitrust Litig., 112 F. Supp. 2d 1175, 1177 (J.P.M.L. 2000); In re King Res. Co. Sec. Litig., 458 F. Supp. 220, 222 (J.P.M.L. 1978) (per curiam).

transferred actions in an MDL court, see, e.g., In re Wilson, 451 F.3d at 169-70; In re

Zyprexa Prods. Liab. Litig., 375 F. Supp. 2d 170, 172 (E.D.N.Y. 2005), but in light of the

previous failed attempts, settlement appears unlikely under the circumstances here.

    Lastly, while there undoubtedly exists some repetition in the claims asserted in

each Related Action (such as those for civil conspiracy and unjust enrichment), the core

claims in those cases arise under the laws of the states in which they were originally filed.

Yet, conduct that constitutes "unfair competition" in violation of the California Business

& Professions Code (as alleged in Lange) may, or may not, constitute "deceptive

consumer sales practices" under Indiana law (as alleged in Pemberton) or violate the

Michigan Pricing and Advertising of Consumer Items Act (as alleged in Super).   "[T]he

transferor courts, each of which is familiar with the state law of their respective

jurisdictions, are in a better position to assess" these claims.  In re Light Cigarettes, 2011

WL 6151510, at *4; accord, e.g., In re State St. Bank & Trust Co. Fixed Income Funds

Inv. Litig., MDL No. 1945, 2011 WL 1046162, at *4 (S.D.N.Y. Mar. 22, 2011)

(suggesting remand of actions transferred from Texas to New York where discovery was

complete and remaining issues involved only application of Texas law).  The fact that the

plaintiffs' claims have some degree of commonality is not a sufficient reason to keep the

Related Actions here.  See In re Brand-Name Prescription Drugs Antitrust Litig., 264 F.

Supp. 2d 1372, 1375-76 (J.P.M.L. 2003) (remanding seventeen actions that all alleged

violation of Robinson-Patman Act).

    The Court recognizes that there are currently pending Motions to Dismiss in the

Related Actions and that cross-Motions for Summary Judgment have been filed (although

not fully briefed) in each.  But "[i]t is not contemplated that a Section 1407 transferee judge will necessarily complete all pretrial proceedings in all actions transferred and assigned to him by the Panel." In re State St., 2011 WL 1046162,  at *4 (quoting In re Evergreen Valley, 435 F. Supp. at 924).  Indeed, the statute authorizing consolidation before a single judge makes clear that a transferred action may be remanded "at *or before the conclusion of*" coordinated pretrial proceedings. 28 U.S.C. § 1407(a) (emphasis added); accord In re Brand-Name Prescription Drugs, 264 F. Supp. 2d at 1375 ("The plain language of section 1407 accords the Panel discretion to remand cases before the conclusion of pretrial proceedings.").  For this reason, the JPML relies heavily on the transferee judge to determine when remand is appropriate, and "the degree and manner of coordinated or consolidated pretrial proceedings *is left entirely to the discretion of the trial judge*." In re Data Gen. Corp. Antitrust Litig., 510 F. Supp. 1220, 1226 (J.P.M.L. 1979) (*per curiam*) (emphasis added); accord, e.g., In re Light Cigarettes, 2011 WL 6151510, at *2 ("[T]he JPML 'leave[s] the extent and manner of coordination or consolidation . . . to the discretion of the transferee court.'") (quoting In re Vioxx Prods. Liab. Litig., 360 F. Supp. 2d 1352, 1354 (J.P.M.L. 2005)).  Courts, therefore, routinely suggest remand despite pending dispositive motions, see, e.g., In re State St., 2011 WL 1046162, at *4-6 (suggesting remand notwithstanding pending motions for summary judgment); In re Ford Motor Co., 1998 WL 308013, at *2 & n.11 (same), and the JPML has repeatedly remanded cases under such circumstances, see, e.g., In re Baseball Bat, 112 F. Supp. 2d at 1177 (remanding cases despite pending motions to dismiss in transferee court); In re Evergreen Valley, 435 F. Supp. at 924 (same).

- 12 -

Regardless, the pending Motions confirm that a suggestion of remand is appropriate at this time.  While the substance of the Motions undeniably overlaps in some respects (both factually and legally), they raise many state-law issues unique to each case. For example, the defendants have argued that certain claims in <u>Beld</u> (the Wisconsin action) are barred by that state's three-year statute of repose and that certain claims in <u>Lange</u> (the California action) are barred by two different California statutes of limitations.  The defendants also have sought dismissal of the constructive-fraud claim in <u>Pemberton</u> (the Indiana action), a claim that does not appear in any other case.  When the defendants asserted that some of the plaintiffs' statutory claims were insufficiently pleaded under Federal Rule of Civil Procedure 9(b), the plaintiffs responded, *inter alia*, that this rule does not apply to their claims under Florida, Maryland, and Wisconsin law. The plaintiffs also asserted that the economic-loss doctrine does not bar claims under California, Florida, and Maryland law, as contended by the defendants.  (<u>See generally</u> MDL Doc. Nos. 173, 178, 193.)  Similar state-specific issues cut across the summary-judgment Motions.  These issues are best addressed by courts in the states where the plaintiffs' claims arose.  <u>See, e.g.</u>, <u>In re Ins. Brokerage Antitrust Litig.</u>, MDL No. 1663, 2009 WL 1874085, at *4 (D.N.J. June 30, 2009) ("[A]djudication of dispositive motions will also require the application of Missouri state statutory and common law.  The Court believes that such a detailed review may best be undertaken by the court that sits in that state and more frequently applies the law that controls Plaintiffs' cases.").

The newly filed Motion in <u>Buetow</u> drives this point home.  There, the defendants assert that the plaintiffs cannot show any public benefit from their claims, a (supposed)

prerequisite to proceeding under the Minnesota statutes in question.  The public-benefit issue is currently pending before the Minnesota Supreme Court in an unrelated case, and this Court is awaiting that decision to provide guidance on how to resolve the Motion. But while the Court's resolution of the public-benefit question may have a great impact on <u>Buetow</u>, it will not affect any of the Related Actions; that issue relates *only* to claims under the Minnesota statutes invoked in that case.

Moreover, as the Eighth Circuit recently emphasized, in order to establish liability (whether at summary judgment or at trial) each plaintiff must prove (1) what advertisement(s) he saw, (2) how he was "deceived" by the advertisement(s), and (3) how he was damaged thereby.  <u>Buetow</u>, 650 F.3d at 1186-87.  These are quintessentially individual issues necessitating separate proof.   <u>See, e.g.</u>, <u>In re Meridia Prods. Liab. Litig.</u>, 328 F. Supp. 2d 791, 799 (N.D. Ohio 2004) ("By its nature, specific causation is not common to all plaintiffs.  Rather, it involves a 'determination [that] is highly individualistic, and depends upon the characteristics of individual plaintiffs.'") (quoting <u>In re Agent Orange Prod. Liab. Litig.</u>, 818 F.2d 145, 165 (2d Cir. 1987)).  Indeed, this is precisely why the Court denied class certification in <u>Buetow</u> and in each of the Related Actions.  Yet, an "MDL seeks to promote judicial economy and litigant efficiency by allowing the transferee court to preside over matters *common among all cases*.  Given this function, the transferee court typically does not rule on cumbersome, case-specific legal issues." <u>In re Phenylpropanolamine Prods. Liab. Litig.</u>, MDL No. 1407, 2004 WL 2034587, at *2 (W.D. Wash. Sept. 3, 2004) (emphasis added); <u>accord, e.g.</u>, <u>In re State St.</u>, 2011 WL 1046162, at *5; <u>In re Nuvaring</u>, 2009 WL 4825170, at *1.  Simply put,

- 14 -

"making such case-specific rulings are neither the purpose, nor the forte, of a court presiding over a multi-district litigation." In re Phenylpropanolamine, 2004 WL 2034587, at *2. Nor does the Court believe it has obtained "any particular expertise . . . from supervising this litigation" that would render it more capable than the transferor courts of disposing of the pending Motions, In re Air Crash Disaster Near Dayton, Ohio, 386 F. Supp. 908, 909 (J.P.M.L. 1975) (per curiam); accord, e.g., In re King Res. Co., 458 F. Supp. at 221, which can "easily be presented to and determined by" them, In re Evergreen Valley, 435 F. Supp. at 924.[9]

The transferee judge, who "is charged with the day-to-day supervision of centralized pretrial proceedings," has "special insight" into whether further coordinated or consolidated proceedings would be beneficial. In re Brand-Name Prescription Drugs, 264 F. Supp. 2d at 1376. In other words, he is in the best position to decide that "the game no longer is worth the candle" and that he "perceives his role under section 1407 to have ended." Id. Although "the Court is leaving some pretrial work undone" by suggesting remand, it believes that "the central purpose of the JPML referral has been achieved" now that discovery is over, class certification has been denied, and what

---

[9] Furthermore, any Related Action (or claims therein) surviving the pending Motions must be tried in the transferor courts. Disposing of the pending Motions, therefore, affords those courts the opportunity to come "up to speed" on the issues in advance of trial. See, e.g., In re State St., 2011 WL 1046162, at *6 ("[I]t would not be in the interests of judicial economy for this Court to rule on the pending motions for summary judgment when these cases must ultimately be remanded to the transferor courts for trial."); In re Baseball Bat, 112 F. Supp. 2d at 1177 (remanding action despite outstanding discovery issues and pending motion to dismiss in transferee court because those matters could "best be managed . . . [by] the transferor judge who, under [Lexecon], is the judge who must preside over any eventual . . . trial").

remain are a handful of cases requiring individualized proof on many state-specific

issues.  In re Light Cigarettes, 2011 WL 6151510, at *4.

Based on the foregoing, and all the files, records, and proceedings herein, the

undersigned respectfully **SUGGESTS** to the JPML that the above-listed actions be

**REMANDED** to their original courts.


Date:  January 10, 2012                                    s/Richard H. Kyle
                                                           RICHARD H. KYLE
                                                           United States District Judge